# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

William and Wendolyn Hewitt   :
             :
    v.        :
             :  No. 1518 C.D. 2018
Hellam Township Board of Supervisors : Argued: April 11, 2019
             :
    v.        :
             :
Gary Geiselman, Suzanne McConkey, :
Devin Winand and Tom Lang,   :
      Appellants   :

BEFORE:  HONORABLE RENÉE COHN JUBELIRER, Judge
      HONORABLE P. KEVIN BROBSON, Judge
      HONORABLE ELLEN CEISLER, Judge

<u>**OPINION NOT REPORTED**</u>

**MEMORANDUM OPINION BY**
**JUDGE COHN JUBELIRER**     **FILED: June 26, 2019**

Gary Geiselman, Suzanne McConkey, Devin Winand, and Tom Lang (Objectors) appeal from an Order dated October 29, 2018, in which the Court of Common Pleas of York County (common pleas) granted a land use appeal by William and Wendolyn Hewitt (Applicants) from a decision by the Hellam Township Board of Supervisors (Board), which denied Applicants' revised application for a conditional use (Revised Application) to operate a Winery, Type B, on a 16.62-acre property in Hellam Township (the Property). Applicants had previously filed an application for a conditional use (Original Application) that was

also denied by the Board. While Applicants' appeal of that denial was pending in common pleas, they filed the Revised Application.[1] New hearings were held on the Revised Application, but like the Original Application, the Board denied the Revised Application, resulting in Applicants also appealing that decision to common pleas. Common pleas ultimately reversed the Board's denial of the conditional use in both cases, and a number of residents who opposed the proposed use appealed common pleas' orders to this Court.[2] Because the Revised Application does not meet the specific, objective criteria of the Ordinance for the same reasons as the Original Application, we reverse common pleas' Order.

## I. BACKGROUND

On March 6, 2018, Applicants submitted the Revised Application for a conditional use to operate a Winery, Type B. The Revised Application provided that Applicants would construct a new 55' x 90' accessory building, which they referred to as a carriage house, towards the center of the Property. The carriage house would be used to host weddings and other special events. The Original Application called for the existing barn on the Property to be converted into a weddings/events venue. The carriage house would be set back farther from the road and neighboring homes than the barn. Like the barn, the carriage house would be insulated for soundproofing. It would also have a sound system

---

[1] The key distinction between the two applications is that the Original Application involved conversion of the existing facilities to accommodate the proposed use, whereas the Revised Application involved construction of a new accessory building.

[2] The Original Application was the subject of the appeal in *Hewitt v. Hellam Township Board of Supervisors* (Pa. Cmwlth., No. 1342 C.D. 2018, filed June 26, 2019) (*Hewitt I*), which was argued seriately with this appeal. Objectors Geiselman, McConkey, and Winand were also parties in *Hewitt I*.

controlled by Applicants, identical to that proposed in the Original Application. The Revised Application also called for an "architect" to deliver a sound rating for the building and design the building to reduce the escape of sound. The Revised Application further stated that "Acoustic Distinctions will monitor and provide expert analysis that the sound levels [will] not exceed 65 db [decibels] at the property lines." (Reproduced Record (R.R.) at 4a.) The Revised Application expressly stated that Applicants would plant orchards by the spring of 2020. Those orchards would also serve to buffer noise. Wine production would begin in late 2019, possibly earlier, as Applicants would purchase juice and fruits elsewhere to be used for production.

The Hellam Township Planning Commission voted 5-1 in favor of recommending approval.[3] (*Id.* at 50a-51a.) The Revised Application proceeded to the Board for a public hearing on March 15, 2018. At the hearing, Mr. Hewitt testified as follows. Applicants would use the existing house for a wine tasting room, winemaker dinners, and rehearsal dinners. The existing garage and barn would be used for storage, farming, and winemaking. Applicants would build a new 4,950-square-foot carriage house, which would be set back between 180 to 300 feet from the property lines. Grapes and other orchard producing fruits would be planted. At least two acres would be planted as soon as possible.[4] Applicants would commence production of sweet wines immediately by buying fruit from a neighboring farmer and others. They would also test the soil to determine what

---

[3] As the Revised Application was working its way through the process, the Planning Commission and Board were considering an amendment to the Ordinance to address special event venues, which was proposed after the Original Application was denied. (R.R. at 45a-72a.)

[4] Applicants were still under an agreement of sale to purchase the Property. The executor of the estate that owns the Property testified in favor of the proposal.

3

exact crops are best suited for the Property. (*Id.* at 149a-52a.) Applicants consulted an acoustic engineer. A sound system would be installed that Applicants control. Any outside functions, such as wedding ceremonies and wine tastings, would be confined to the interior of the Property to minimize the effect on neighbors. Outdoor events would be at least 150 feet from the property line, and if necessary, a special event permit would be obtained. (*Id.* at 157a-61a.)

On cross-examination, Mr. Hewitt testified as follows. At least two acres of grapes would be planted, and Applicants would look to expand to blueberries, strawberries, and other types of wine-producing fruits. He estimated 27 events would be hosted in 2019, if the Revised Application was approved. No more than one event would be held each day. At the beginning of operations, he admitted the events side of the operation would drive revenue because it would take a while to get production fully operational. Employees for the carriage house would also help with the vineyard and the manufacturing side. (*Id.* at 167a-220a.)

The individual who farms the neighboring property, as well as leases and farms some of this Property, also testified. Based upon his knowledge of the soil, he believes the Property could produce wine-producing crops. He stated he currently grows some on the adjoining lot. He anticipates growing grapes, blueberries, and pears. It would take two to three years to see some production and five to six years for full production. (*Id.* at 222a-24a.)

An acoustic consultant also testified for Applicants. He said 10 voices at 300 feet equates to approximately 25 decibels. The average decibel level in a field is 35-40. In his opinion, a rural farm could generate as much noise as a 230-person gathering. He testified that sound can be controlled through construction and the sound system. (*Id.* at 236a-51a.)

4

Applicants also presented the testimony of a traffic engineer and introduced a copy of a letter he prepared detailing the trip generation characteristics for the Property. (*Id.* at 267a-90a; Record (R.) Item 14.) According to traffic engineer, he consulted the Institute of Transportation Engineers' Trip Generation Manual and, based upon the square footage of the various buildings, calculated new trip generation for the winery as follows:

| Time Period | Total Site Trips | | |
|---|---|---|---|
| | Total | Enter | Exit |
| Average Weekday | 442 | 221 | 221 |
| Weekday P.M. Peak Hour | 70 | 35 | 35 |
| Friday P.M. Peak Hour | 105 | 32 | 73 |
| Saturday Peak Hour of Generator | 238 | 112 | 126 |
| Sunday Peak Hour of Generator | 287 | 138 | 149 |

(R. Item 14.) He testified that the current trips on the road range from 400 to 550 per day. Traffic engineer acknowledged an increase trip generation but opined that it would not substantially change the character of the neighborhood. (*Id.*; R.R. at 274a, 281a-82a.)

A number of residents cited traffic as a concern, in addition to noise. Objector Thomas Lang's property borders the west side of the Property. He described the area as a quiet, residential neighborhood that does not see heavy traffic. Common sense, he said, provides that neighbors will hear noise. He testified the Property "just [is] not a proper location for the use" and it will detract from the use and enjoyment of his property. (R.R. at 343a-44a.) Another resident testified his property value would decrease. Objector McConkey presented the

Board with a petition containing 77 signatures of people opposed to the project. (*Id.* at 371a.) Another resident projected people would drive drunk from the events at the Property. (*Id.* at 383a.) A number of residents also characterized the area as residential despite its zoning designation – Rural Agricultural (RA Zone). (*Id.* at 367a, 384a, 397a.)

The Chairman of the Board of Supervisors polled attendees at the first hearing to see how many shared the concerns expressed. Twenty-two attendees raised their hand. Eleven attendees raised their hand when asked if they supported the Revised Application. (*Id.* at 377a, 379a.) The Board adjourned the hearing without voting.

It reconvened on April 5, 2018, at which time the Board voted 4-1 to deny the Revised Application. As it did with the Original Application, the Board determined Applicants did not satisfy the noise control plan requirement. (Board Decision, Conclusion of Law (COL) ¶ 4.E.) In addition, the Board concluded Applicants' intention to plant wine-producing crops in two to three years was insufficient to meet the minimum planting requirement, and that the delay evidenced the principal use of the Property as an event venue, not a vineyard. (*Id.* ¶ 4.) The Board further concluded, as it did with the Original Application, that the proposed use would detract from the use and enjoyment of nearby properties and would change the character of the neighborhood. (*Id.* ¶ 6.B-C.)

Applicants appealed to common pleas, which reversed for the same reasons it reversed the Board's Decision involving the Original Application. Specifically, common pleas concluded Applicants satisfied the specific criteria of the Ordinance for noise and minimum acreage for wine-producing crops, and Objectors' speculative testimony was insufficient to sustain their burden. Finally, with regard to whether the winery was an accessory or principal use, common pleas stated since the carriage house is not yet built, it will likely not be ready until the

6

vineyard is planted. Moreover, common pleas held an operating vineyard and winery was not a prerequisite to conditional use approval. Objectors appealed to this Court.

## II. PARTIES' CONTENTIONS

Although the factual record differs because of new hearings on the Revised Application, the legal issues in this case and *Hewitt v. Hellam Township Board of Supervisors* (Pa. Cmwlth., No. 1342 C.D. 2018, filed June 26, 2019) (*Hewitt I*), which involved the Original Application, are identical. On appeal,[5] Objectors raise the same three issues as they did in *Hewitt I*:[6] (1) whether Applicants satisfied the specific requirements of the Ordinance by providing a plan for noise control; (2) whether the Board's findings that the proposed project would change the character of the neighborhood or have a detrimental effect on neighboring property owners is supported by substantial evidence; and (3) whether the principal use is actually a winery and not a vineyard.

The parties' arguments are also virtually the same as in *Hewitt I*.[7] Specifically, Objectors assert Applicants did not submit a detailed written plan that addresses noise control, including explaining how noise complaints will be addressed. Objectors also contend that Applicants did not demonstrate the

___

[5] Because common pleas took no additional evidence, our review is limited to determining whether the Board erred as a matter of law or abused its discretion. *Williams Holding Grp., LLC v. Bd. of Supervisors of W. Hanover Twp.*, 101 A.3d 1202, 1211 n.8 (Pa. Cmwlth. 2014). An abuse of discretion occurs if the Board's findings are not supported by substantial evidence. *Id.* Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *River's Edge Funeral Chapel & Crematory, Inc. v. Zoning Hearing Bd. of Tullytown Borough*, 150 A.3d 132, 142 (Pa. Cmwlth. 2016).

[6] The issues have been reordered to correspond with the issues raised in *Hewitt I*.

[7] The parties' arguments are more fully developed in *Hewitt I*, slip op. at 11-15.

7

proposed use will not detract from the use or enjoyment of nearby properties or change the character of the neighborhood, and that Objectors presented substantial evidence concerning the impact of lights, noise, and traffic on their quiet neighborhood. Finally, Objectors argue the proposed winery is not incidental to a vineyard, since no vineyard yet exists and will not exist for three to five years; therefore, the proposed winery cannot be an accessory use, but is a principal one.

The Board joins in Objectors' brief and separately argues deference is due to its interpretation of the Ordinance and its findings of fact and credibility determinations. The Board further asserts the Applicants' own traffic expert shows the detrimental impact on the surrounding community.

Applicants maintain they satisfied the Ordinance's specific criteria, thereby shifting the burden to Objectors to show the detrimental effect on the surrounding community, which Objectors have not done. With regard to whether the principal use is a vineyard, Applicants respond that the Ordinance merely requires that at least two acres be planted with wine-producing crops, which will be done here. They also argue that the scale of the winery is small in comparison to the vineyard and crops.

## III.  DISCUSSION

In *Hewitt I*, we explained that "[a]n applicant bears the initial burden of demonstrating that its proposed use meets the specific, objective criteria of an ordinance." *Hewitt I*, slip op. at 16. An applicant's failure to meet the specific, objective criteria means the inquiry ends and there is no need to reach the general, subjective criteria because the applicant has not satisfied its prima facie burden. *Id.* at 18. The Ordinance here is the same as in *Hewitt I* and provides:

8

The applicant shall provide a detailed written plan addressing . . .

. . . .

Control of noise:

[i] The plan for noise control shall take into account and use topography and/or buildings to minimize noise effects on the surrounding community.

[ii] Outdoor functions shall be confined to an area within the interior of the property to minimize the impact of noise and other activities to adjacent and/or surrounding properties.

[iii] Explanation of how amplified sound and noise complaints will be addressed.

(Ordinance, § 490-130.1.B.)

The Revised Application addresses noise control as follows:

The events will be mainly indoor events, except for outdoor wedding ceremonies, and other approved uses as set forth for [a W]inery B. These will take place on the interior part of the property to minimize noise. We also plan to insulate the accessory building to reduce noise. We will be installing a sound system that we control. Our contract will include verbiage so that those renting understand noise concerns. We will be closely monitoring. We will have our architect deliver a sound rating for the building, and it will be designed to reduce sound from exiting the building. We will also hire[] a sound engineer to monitor db levels. Acoustic Distinctions will monitor and provide expert analysis that the sound levels [will] not exceed 65 db at the property lines.

The new orchards will also help as a noise buffer.

(Revised Application, R.R. at 4a.)

Save for the addition of the architect, sound engineer, and Acoustic Distinctions, the Revised Application's plan for noise control is essentially the

9

same as the Original Application's plan.[8]  Unfortunately, for the same reasons as the Original Application's noise control plan failed to satisfy the Ordinance's requirements, so does the Revised Application's noise control plan.  As we explained in *Hewitt I*, "the Ordinance requires an applicant to submit 'a **detailed** written plan,' which addresses, among other things, an '[e]xplanation of **how** amplified sound and **noise complaints will be addressed.**'"  *Hewitt I*, slip op. at 18 (quoting Ordinance, § 490-130.1.B) (emphasis in original).  However, the Revised Application, like the Original "Application[,] does not contain a detailed written plan that explains how noise complaints will be addressed."  *Id.*  Rather, the Revised Application provides a detailed, written plan explaining what will be done to **prevent or minimize** the likelihood of noise complaints.  It does not explain how noise complaints will be addressed once they are made, especially not in any detail, as required by the Ordinance.  Furthermore, although Applicants presented the testimony of an acoustic consultant at the hearings, this oral testimony does not satisfy the Ordinance's requirement for a written plan.  *See Hewitt I*, slip op. at 19 (also holding testimony presented at the hearing was insufficient given the Ordinance's requirement for a written plan).  Accordingly,

---

[8] The Original Application provided:

> The events will be mainly indoor events, except for outdoor wedding ceremonies, and other approved uses as set forth for [W]inery B.  These will take place on the interior part of the property to minimize noise.  We also plan to insulate the barn to reduce noise.

> We will be installing a sound system that we can control.  Our contract will include verbiage so that those renting understand noise concerns.  We will be closely monitoring[.]

*Hewitt I*, slip op. at 19 (quoting Original Application).

10

common pleas erred in finding Applicants satisfied the specific, objective criteria of the Ordinance.

## IV.    CONCLUSION

The Revised Application here suffers from the same deficiencies as the Original Application in *Hewitt I*.  Because the Revised Application does not meet the specific, objective criteria set forth in the Ordinance, *i.e.*, a "detailed written plan addressing . . .  how amplified sound and noise complaints will be addressed," (Ordinance, § 490-130.1.B), Applicants did not satisfy their prima facie burden. Therefore, we reverse common pleas' Order to the contrary.[9]

_____

**RENÉE COHN JUBELIRER,** Judge

---

[9] Like in *Hewitt I*, it is not necessary to address Objectors' other arguments given our disposition.

11

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

William and Wendolyn Hewitt     :
    :
       v.     :
    :   No. 1518 C.D. 2018
Hellam Township Board of Supervisors     :
    :
       v.     :
    :
Gary Geiselman, Suzanne McConkey,     :
Devin Winand and Tom Lang,     :
              Appellants     :

# **O R D E R**

NOW, June 26, 2019, the Order of the Court of Common Pleas of York County, dated October 29, 2018, is **REVERSED.**

_____

**RENÉE COHN JUBELIRER,** Judge